UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------- X
                   :

JOSEPH HARRIS and J. HARRIS LLC
d/b/a CONESTOGA CAPITAL         :
PARTNERS LLC,

                   :

    Plaintiffs/Counterclaim Defendants,

                   :        **OPINION AND ORDER**

    - against -

                   :        11 Civ. 3450 (SAS)

EDWARD COLEMAN, THAT'S    :
CLEVER, INC., SENECA PRODUCTS
CORPORATION, INC., A-GAME    :
GLOBAL, INC., B.O.K.
INTERNATIONAL TRADING, INC.,  :
B.O.K. INTERNATIONAL, INC., and
COLIN JON,               :

    Defendants/Counterclaim Plaintiffs.

-------------------------------------------------- X
SHIRA A. SCHEINDLIN, U.S.D.J.:

# I.    INTRODUCTION

        Joseph Harris and Conestoga Capital Partners LLC ("Conestoga") are

suing Edward Coleman, That's Clever, Inc. ("TCI"), Seneca Products Corporation,

Inc., A-Game Global, Inc. ("A-Game"), B.O.K. International Trading, Inc., B.O.K.

International, Inc. ("BOK"), and Colin Jon, seeking monetary relief as well as a

declaration that Conestoga owns the '635 Patent and the related trademark rights.

In their answer to the Complaint, defendants (hereafter "counterclaim-plaintiffs" or

"Coleman and TCI") bring counterclaims against Harris and Conestoga (collectively "counterclaim-defendants" or "Harris and Conestoga").  The counterclaims: (1) seek a declaration that Coleman owns the '635 Patent and the related trademarks; (2) allege that Harris and Conestoga are liable for a fraudulent conveyance; and (3) allege that Harris and Conestoga are liable for conversion and seek recovery of the value of the intellectual property at issue.  Coleman and TCI also seek attorneys' fees pursuant to 35 U.S.C. § 285 and Debtor and Creditor Law ("DCL") § 276-a, and financial sanctions pursuant to Title 22 of the Official Compilation of Codes, Rules and Regulations of the State of New York ("N.Y.C.R.R.").  Harris and Conestoga now move to dismiss all counterclaims pursuant to Rule 12(b)(6) for failure to state a claim and Rule 12(b)(1) for lack of standing. For the reasons stated below, this motion is granted in part and denied in part.

## II.    BACKGROUND

### A.    The Underlying Action

In 2003, Harris made an initial investment in TCI, a company owned by Coleman.[1]  The purpose of the investment was to fund Coleman's development of a golf shoe that incorporated club-cleaning bristles in its outsole (the "Brisole

---

[1]      *See* First Amended Complaint ("Compl.") ¶ 36.

golf shoes").[2]  On September 11, 2007, TCI executed a Manufacturing and Distribution Agreement ("MDA") with BOK for the purpose of granting a license to BOK to manufacture, market and sell footwear with the Brisole Design.[3]  In return, BOK agreed to pay TCI a royalty on its sales of the licensed products.[4]  Additionally, under the MDA, TCI was an authorized direct distributor of shoes with the Brisole design.

Plaintiffs allege that on March 17, 2008, Coleman assigned the "entire right, title and interest" to the Brisole design to TCI ("the Coleman Assignment").[5]  On November 7, 2008, Harris sued Coleman alleging that Coleman had falsified TCI financial records.[6]  As part of a December 1, 2009 settlement agreement, TCI assigned Conestoga its rights to the Brisole Design and its rights under the MDA.[7]  Additionally, TCI would continue to receive a share of the royalties from BOK as required under the MDA.  Plaintiffs allege that BOK consented in writing to the

---

[2]      A patent application for the Brisole golf show was filed by Coleman on November 9, 2007 and approved on June 10, 2010.

[3]      *See id.* ¶ 29.

[4]      *See id.* ¶ 31.

[5]      *See id.* ¶ 26.

[6]      *See id*. ¶¶ 37-38.

[7]      *See id.* ¶¶ 39-41.

TCI Assignment.[8]  The December 1 settlement also provided that title to the intellectual property would revert to TCI after ten years, provided that Coleman and TCI did not default on their obligations pursuant to the settlement.

Further, plaintiffs allege that in connection with the December 1 settlement, the parties entered into a Stock Purchase Agreement on December 2, 2008.  As part of this agreement, plaintiffs allege that Coleman agreed to make monthly payments to Harris under a Promissory Note, and that Coleman's companies, TCI and Seneca, would guarantee his obligations.[9] Plaintiffs allege that Coleman ceased making payments due under the Promissory Note in December 2010.[10]  Plaintiffs also allege that BOK has failed to make royalty payments to Conestoga as required by the December 1 settlement.[11]

Finally, plaintiffs allege that around the time that payments stopped, Coleman and Jon formed A-Game in Nevada.[12]  Plaintiffs allege that A-Game has since succeeded TCI as the distributor and online retailer of the Brisole Golf Shoes in the U.S., and that Conestoga should have been – but was not – paid royalties on

---

[8]      *See id.* ¶ 42.

[9]      *See id.* ¶ 44.

[10]     *See id.* ¶¶ 59-61.

[11]     *See id.* ¶ 53.

[12]     *See id.* ¶ 49.

the sales of those shoes.[13]

### B.   The Counterclaims[14]

In their answer to the First Amended Complaint, Coleman and TCI assert that they are the ones who have been the target of fraud, and that Harris – one of the counterclaim-defendants – fabricated two legal documents purporting to assign or transfer the intellectual property rights at issue: (1) an assignment from Coleman to TCI; and (2) a transfer of intellectual property rights to Conestoga and Harris.  Coleman asserts that he never executed an assignment transferring ownership of the '635 Patent to TCI or any another entity.[15]  Nor did he discuss the provisions contained within the so-called Coleman Assignment with either Harris or Conestoga.[16]  In fact, Harris and Conestoga only recorded the Coleman Assignment with the United States Patent and Trademark Office ("PTO") on July 14, 2011, more than one month after the filing of their initial Complaint, and only two days before the filing of the First Amended Complaint.[17]  Finally, Coleman

---

[13]     *See id.* ¶¶ 49-53.

[14]     The following facts are drawn from the Counterclaims and are presumed to be true for purposes of this motion.

[15]     *See* Defendants' Answer and Counterclaim ("Countercl.") ¶ 20.

[16]     *See id.* ¶ 16.

[17]     *See id.* ¶ 19.

also alleges that because the Coleman Assignment was not included in the materials filed by Harris and Conestoga in either their original Complaint or First Amended Complaint, this establishes that it is a fabricated and fraudulent document.[18]

### 1.   Declaratory Judgment of Patent and Trademark Ownership

The first counterclaim alleges that Harris and Conestoga have incorrectly or fraudulently alleged that they are the rightful owners of the Brisole design intellectual property rights.[19]  Therefore, Coleman and TCI ask this Court to declare: (1) that Coleman is the rightful owner of the '635 Patent; (2) that Coleman never assigned either his rights in the '635 patent or trademark rights to any person or entity; and (3) that Harris and Conestoga have brought and maintained the instant lawsuit based on false documentation.[20]

### 2.   Fraudulent Conveyance

Next, Coleman and TCI allege that Harris and Conestoga conspired to make a fraudulent conveyance by filing with the PTO a fabricated document showing that Coleman transferred the '635 patent to TCI, and by bringing the

---

[18]   *See id.* ¶ 20.

[19]   *See id.* ¶ 23.

[20]   *See id.* ¶ 25.

instant action "with actual intent to hinder, delay and defraud both present and future creditors of Joseph Harris and J. Harris LLC."[21]   Further, Coleman and TCI allege that Harris and Conestoga are the beneficiaries of this fraudulent conveyance, and that they have placed a "significant valuation upon their attempted ownership of the '635 patent."[22]  Finally, counterclaim-plaintiffs seek recovery of the value of their intellectual property as well as attorneys' fees incurred in defending this action.[23]  They also seek "to recover punitive damages in an amount of at least $3 million, estimated at treble the amount of Counter[claim]-Defendants' valuation of the intellectual property they are attempting to take" based on their "willfulness and [] high degree of disregard for the requirements of moral or legal conduct . . . ."[24]

### 3.    Conversion

Finally, Coleman and TCI allege that Harris and Conestoga converted their intellectual property by filing the instant lawsuit that requests a declaration of

---

[21]    *Id.* ¶ 29.  Counterclaim-plaintiffs bring this claim only under DCL § 276.

[22]    *Id.* ¶ 34.

[23]    *See id.*

[24]    *Id* ¶ 36.

ownership, and by filing the fabricated assignment of rights in the '635 patent.[25]

Counterclaim-plaintiffs seek recovery of the value of the intellectual property, with

interest.[26]

## III.   LEGAL STANDARDS

### A.   Rule 12(b)(6) - Failure to State a Claim

In deciding a motion to dismiss pursuant to Rule 12(b)(6),  a court

must evaluate the sufficiency of a complaint under the "two-pronged approach"

articulated by the Supreme Court in *Ashcroft v. Iqbal.*[27]  *First*, a court "'can choose

to begin by identifying pleadings that, because they are no more than conclusions,

are not entitled to the assumption of truth.'"[28]  "Threadbare recitals of the elements

of a cause of action, supported by mere conclusory statements, do not suffice" to

withstand a motion to dismiss.[29]  *Second*, "[w]hen there are well-pleaded factual

allegations, a court should assume their veracity and then determine whether they

---

[25]     *See id.* ¶ 39.

[26]     *See id.* ¶ 42.

[27]     556 U.S. —, 129 S. Ct. 1937, 1950 (2009).

[28]     *Hayden v. Paterson*, 594 F.3d 150, 161 (2d Cir. 2010) (quoting *Iqbal*, 129 S. Ct. at 1950).  *Accord Ruston v. Town Bd. for Town of Skaneateles*, 610 F.3d 55, 59 (2d Cir. 2010).

[29]     *Iqbal*, 129 S. Ct. at 1949 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

plausibly give rise to an entitlement for relief."[30]  To survive a Rule 12(b)(6)

motion to dismiss, the allegations in the complaint must meet a standard of

"plausibility."[31]  A counterclaim should not be dismissed if the counter-plaintiff

has stated "enough facts to state a claim to relief that is plausible on its face."[32]  "A

claim has facial plausibility when the [counter-plaintiff] pleads factual content that

allows the court to draw the reasonable inference that the [counter-defendant] is

liable for the misconduct alleged."[33]  Plausibility "is not akin to a probability

requirement;" rather, plausibility requires "more than a sheer possibility that a

defendant has acted unlawfully."[34]

     "In considering a motion to dismiss for failure to state a claim

pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the

[counterclaim], documents attached to the [counterclaim] as exhibits, and

documents incorporated by reference in the complaint."[35]  However, a court may

---

[30]    *Id.* at 1950.  *Accord Kiobel v. Royal Dutch Petroleum Co.*, 621 F.3d 111, 124 (2d Cir. 2010).

[31]    *Twombly*, 550 U.S. at 564.

[32]    *See id*. at 570.

[33]    129 S. Ct. at 1949.

[34]    *Id.* (quotation marks omitted).

[35]    *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) (citing *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002)).

also consider a document, not incorporated by reference, "where the complaint 'relies heavily upon its terms and effect,' thereby rendering the document 'integral' to the complaint."[36]

### B.   Fraudulent Conveyance

To state a claim for fraudulent conveyance in violation of DCL § 276, a plaintiff must allege that "[e]very conveyance  made and every obligation incurred with actual intent, as distinguished from intent presumed in law, to hinder, delay, or defraud either present or future creditors, is fraudulent as to both present and future creditors."[37]  In order to bring a fraudulent conveyance claim, the plaintiff must therefore be a creditor of the transferor.[38]  Further, "[n]on creditors can find no relief in a statute whose 'object . . . is to enable a creditor to obtain his due despite efforts on the part of a debtor to elude payment.'"[39]  A creditor is "a person having any claim, whether matured or unmatured, liquidated or

---

[36]     *Id*. (quoting *Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006)).  *Accord Global Network Commc'ns, Inc. v. City of N.Y.*, 458 F.3d 150, 156 (2d Cir. 2006).

[37]     DCL § 276.

[38]     *See id*. §§ 270-281.  *Accord Drenis v. Haligiannis*, 452 F. Supp. 2d 418, 428 (S.D.N.Y. 2006).

[39]     *Eberhard v. Marcu*, 530 F.3d 122, 131 (2d Cir. 2008) (quoting *Hearn 45 St. Corp v. Jano,* 283 N.Y. 139, 142 (1940)).

unliquidated, absolute, fixed or contingent."[40]

Additionally, "[t]o state a claim under DCL § 276, the plaintiff must meet the heightened standard under Rule 9(b), Fed.R.Civ.P., which requires that the allegation be made with particularity."[41]   Intent to defraud

> may be inferred from circumstantial evidence, or 'badges of fraud,' including: (1) the inadequacy of consideration received in the allegedly fraudulent conveyance; (2) the close relationship between parties to the transfer; (3) information that the transferor was rendered insolvent by the conveyance; (4) suspicious timing of transactions or existence of a pattern after the debt had been incurred or a legal action against the debtor had been threatened; or (5) the use of fictitious parties.[42]

Finally, when a conveyance is proved to have been made by a debtor and received by a transferee with actual intent to defraud under Section 276, the creditor is

---

[40]     *See* DCL § 270.

[41]     *Friedman v. Wahrsager*, No. 11 CV 815, 2012 WL 273069, at *9 (E.D.N.Y. Jan. 30, 2012).

[42]     *Eclaire Advisor Ltd. v. Daewoo Eng'g & Constr. Co.*, 375 F. Supp. 2d 257, 268-269 (S.D.N.Y. 2005).  *Accord In re Actrade Fin. Techs. Ltd.*, 337 B.R. 791, 809 (Bankr. S.D.N.Y. 2005) (stating that "[w]hile badges of fraud are not a prerequisite to a finding of actual fraudulent intent, their existence does help to 'focus the inquiry on the circumstances that suggest a conveyance was made with fraudulent intent, viz. with the purpose of placing a debtor's assets out of the reach of creditors' " (quoting *In re Sharp Int'l Corp.*, 302 B.R. 760, 764 (E.D.N.Y. 2003), aff'd, 403 F.3d 43 (2d Cir. 2005))).

entitled to recover reasonable attorneys' fees from the debtor and transferee.[43]

### C.    Conversion

To state a claim for conversion, a plaintiff must allege facts sufficient to establish that the defendant acted without authorization, defendant exercised dominion or right of ownership over property belonging to the plaintiff, plaintiff has made a demand for the property, and that demand has been refused.[44]  Plaintiff must also "demonstrate legal ownership or an immediate superior right of possession to a specific identifiable thing."[45]   Typically, "only tangible property can be the subject of a conversion action, but intangible rights can form the basis of conversion damages when the converted property is a document into which intangible rights have merged."[46]

## IV.  DISCUSSION

---

[43]    DCL § 276–a.

[44]    *See Seanto Exports v. United Arab Agencies*, 137 F. Supp. 2d 445, 451 (S.D.N.Y. 2001).  "Demand is not always required in order to make out a claim for conversion.  It is required only when the original possession is lawful." *Reserve Solutions, Inc. v. Vernaglia*, 438 F. Supp. 2d 280, 288 (S.D.N.Y. 2006).

[45]    *Gateway Overseas, Inc. v. Nishat Ltd.*, No. 05 Civ. 4260, 2006 WL 2015188, at *7 (S.D.N.Y. July 13, 2006) (quotation marks and citation omitted).

[46]    *Ancile Inv. Co. Ltd. v. Archer Daniels Midland Co.*, 784 F. Supp. 2d 296, 312 (S.D.N.Y. 2011) (citing *In re Chateaugay Corp.*, 136 B.R. 79, 85–86 (Bankr. S.D.N.Y. 1992); Restatement (Second) of Torts, § 242.

## A.      Counterclaim I - Standing to Seek Declaratory Relief

To meet the constitutional standing requirement, counterclaim-plaintiffs must show that they have suffered an injury-in-fact, that the injury is traceable to the conduct complained of, and that the injury is redressable by a favorable decision.[47]  Parties not holding title to a patent have been accorded the right to sue, or standing, only in certain limited circumstances.[48]  However, standing to seek a declaratory judgment is not limited solely to those with ownership rights to a patent.[49]  Coleman has standing as the inventor and alleged rightful owner of the patent, as does TCI, who was allegedly assigned the patent.  Likewise,  each of the remaining counterclaim-plaintiffs were brought into this action by counterclaim-defendants based on their roles as licensees or distributors of the patented product, and who are claimed to owe royalties to Harris and Conestoga.  Accordingly, counterclaim-plaintiffs may seek a declaratory judgment in order to determine the rights and relations of the parties.

Because the first counterclaim arises under state law rather than the

---

[47]      U.S. Const. art. III, § 2.  *See also Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992).

[48]      *See AsymmetRx, Inc. v. Biocare Med., LLC*, 582 F.3d 1314, 1318 (Fed. Cir. 2009).

[49]      *See MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118 (2007).

-13-

Patent Act, the counterclaim-defendants argue that counterclaim-plaintiffs cannot obtain damages pursuant to Section 285 of Title 35 of the United States Code (the "Patent Act").   However, when a claim alleges that a patent was obtained through fraud or that a patent application was prosecuted in bad faith, relief may be sought under the Patent Act.[50]  Thus, counterclaim-plaintiffs may proceed on this claim.

### B.    Counterclaim II

#### 1.    Counterclaim-Plaintiffs as Creditors

Harris and Conestoga argue that because Coleman and TCI are not creditors of the transferor (Harris) as defined by DCL § 276, they may not pursue a claim for fraudulent conveyance.[51]  In response, Coleman and TCI rely on *Drenis v. Haligiannis,* which states that "[o]ne who has a right to maintain a tort action but has not recovered judgment at the time of the transfer is a creditor, and 'it is now accepted that the relationship of debtor and creditor [in tort cases] arises the moment the cause of action accrues.'"[52]  However, in *Drenis*, plaintiffs had a pre-existing tort claim against defendants, which was the basis of their fraudulent

---

[50]    *See In re Rivastigmine Patent Litig.*, 246 F.R.D. 428, 432 (S.D.N.Y. 2007).

[51]    *See* DCL §§ 270-281.  *See also Drenis,* 452 F. Supp. 2d at 428.

[52]    452 F. Supp. 2d at 428 (quoting *Shelly v. Doe*, N.Y.S.2d 803, 805 (3rd Dep't 1998)).

conveyance claim.  Here, Coleman and TCI have not alleged any pre-existing tort claim.  Instead, their status as 'tort creditors' is based on the alleged fraudulent conveyance itself.  Accordingly, Coleman and TCI lack standing to bring a fraudulent conveyance claim under DCL § 276.

### 2.     Counterclaim-Plaintiffs Have Not Adequately Pled Fraudulent Intent By the Transferor

Even if Coleman and TCI did have standing, the allegations of their Answer and Counterclaim do not state a claim for fraudulent conveyance under Section 276 of the DCL.  Coleman and TCI allege that Harris fraudulently transferred a patent he did not own from Coleman (the patent owner) to TCI, which then transferred it to Conestoga.  There is no allegation that Harris was either insolvent or faced creditor lawsuits at the time of the transfer.  There is no allegation that the transfer hindered any creditor of Harris from satisfying any judgment against him.  Indeed, according to the allegations, Conestoga ended up with a property right worth over one million dollars.  There is no way that Harris could have defrauded his creditors through this transfer as the allegedly fraudulent Coleman Assignment conveyed something to TCI that Harris never owned.  Not every fraudulent transfer is a fraudulent conveyance under the terms of Section 276 of the DCL.  Accordingly, the claim for fraudulent conveyance is dismissed.

Counterclaim-plaintiffs also seek attorneys' fees under DCL § 276–a,

for any fees associated with a successful section 276 claim. As counterclaim-plaintiffs have not adequately stated a claim for relief under section 276, their section 276–a claim cannot proceed.  Accordingly, counterclaim-defendants' motion to dismiss the fraudulent conveyance claim is granted.

### C.    Counterclaim III

Finally, Harris and Conestoga argue that the third counterclaim must be dismissed because patents and trademarks are intangible property and are therefore not subject to conversion under New York law.[53] Counterclaim-plaintiffs, in turn, maintain that conversion claims may apply to intellectual property.  To state a claim for conversion, counterclaim-plaintiffs must allege that they have legal possession or an immediate superior right of possession to the patent assignment.[54] Of the counterclaim-plaintiffs, only Coleman has alleged ownership rights to the patent assignment.[55] Thus, the remaining

---

[53]     *See Club Protector, Inc. v. Peta*, No. 01 Civ. 0337, 2002 WL 1020782, at * 3 (W.D.N.Y. Mar. 8, 2002).

[54]     *See BNP Paribas Mortg. Corp. v. Bank of Am., N.A.*, No. 10 Civ. 8630, 2011 WL 3847376, at *6 (S.D.N.Y. Aug. 30, 2011).

[55]     *See* Countercl. § 38 ("Coleman is the inventor and true owner of United States Patent Number D616-635 as well as trademark rights related to the subject matter of the '635 patent").

counterclaim-plaintiffs lack standing and may not proceed with this claim.

New York has made exceptions to the general principle that intangible property is not subject to a claim of conversion. For instance, some electronic manifestations of physical property, such as virtual information, can now form the basis for a conversion claim.[56]  Additionally, New York has extended the tort of conversion to some intangible property rights that are "merged in, or identified with, some document" or "relate to specifically identifiable money."[57]  However, there is a scarcity of controlling case law on other intangible property such as patents and intellectual property rights.  Although courts continue to allow certain intangible property to be subject to conversion, the Second Circuit has not yet ruled on whether these rights should extend to intellectual property such as that at issue in this case.

Both parties cite to *Rushing v. Nexpress Solutions, Inc.*[58]  In *Rushing*, plaintiff claimed conversion based on defendants' assertion of ownership over plaintiff's patent rights. The court found that because defendants had converted

---

[56]     *See, e.g., Thyroff v. Nationwide Mut. Ins. Co.*, 8 N.Y.3d 283, 292 (2007) (holding that electronic records may be subject to a claim for conversion).

[57]     *In re Chateaugay *640 Corp.*, 156 B.R. 391, 400 n. 10 (S.D.N.Y. 1993).

[58]     05 Civ. 6243, 2009 WL 104199 (W.D.N.Y. Jan. 14, 2009).

plaintiff's patentable idea, and not a tangible expression of that idea, that a conversion claim could not stand.[59]  However, the court also stated that "had [p]laintiff claimed that [d]efendants converted the patent document issued to him, *Thyroff* would support a claim for conversion."[60]  The *Rushing* court did not state that such a claim could never survive.  Rather, the court only found that the conversion claim could not survive in that case.  The present case is distinguishable from *Rushing*, however, because Coleman and TCI allege that a manifestation of their patentable idea, the PTO's record of patent ownership, was transferred by the allegedly fraudulent assignment document.  Therefore, the instant case, like *Thyroff*, can support a claim for conversion.

Additionally, Harris and Conestoga rely on *Matzan v. Eastman Kodak Co.*, which states that "[t]here is no protected interest in an idea, but only in the tangible expression or implementation of that idea. It [the idea] thus cannot be the subject of conversion."[61]  However, in the twenty-five years since this holding, there has been a growing trend towards recognizing certain types of intangible property as proper subjects of a conversion claim.  Moreover, because of the more

---

[59]     *See id.* at *6.

[60]     *Id.*

[61]     521 N.Y.S.2d 917, 918 (1987).

-18-

recent adoption of the merger doctrine, intangible property may be subject to conversion when represented by a tangible manifestation, such as an electronic or paper record.  In the instant case, the PTO's records represent a manifestation of the intangible intellectual property in much the same way that an electronic record of stock ownership represents a manifestation of who owns the stock.[62] Therefore, intangible property rights, manifested by a patent assignment, can support a conversion claim.  As a result, counterclaim-defendants' motion to dismiss the conversion claim of the patent assignment is denied.

Coleman and TCI also bring a conversion claim for their trademark rights.  However, "[a] trademark is not tangible personal property, but rather is intangible intellectual property having no existence apart from the good will of the product or service it symbolizes."[63]  Therefore, the claim for conversion of trademark rights is dismissed.

### D.   Attorneys' Fees

Counterclaim-plaintiffs have requested attorneys' fees under 22 N.Y.C.R.R. § 130-1.1, which authorizes courts to award costs and sanctions for

---

[62]     *See Thyroff*, 8 N.Y.3d at 292.

[63]     *Financial Matters, Inc. v. Pepsico, Inc.*, No. 92 Civ. 7497, 1993 WL 378844, at *4 (S.D.N.Y. Sept. 24, 1993).

frivolous conduct in civil litigation.[64]  "This provision, however, is part of the Rules of the Chief Administrator of the New York State Courts governing judicial administration of the state courts, and is thus inapplicable to an attorney's conduct in federal court."[65]  As such, the request for attorneys' fees based on section 130-1.1 is denied.

### E.    Leave to Replead

Whether to permit a plaintiff to amend his complaint is a matter committed to a court's "sound discretion."[66]  Rule 15(a) provides that leave to amend a complaint "shall be freely given when justice so requires."[67]  Moreover, "[i]t is the usual practice upon granting a motion to dismiss to allow leave to replead."[68]  However, "it is well established that leave to amend a complaint need not be granted when amendment would be futile."[69]  Because any amendment to

---

[64]     *See* 22 N.Y.C.R.R. § 130–1.1.

[65]     *Jewelers Vigilance Comm., Inc. v. Vitale Inc*., No. 90 Civ. 1476, 1997 WL 582823, at *5 (S.D.N.Y. Sept. 19, 1997).

[66]     *McCarthy v. Dun & Bradstreet Corp*., 482 F.3d 184, 200 (2d Cir. 2007).

[67]     Fed. R. Civ. P. 15(a).

[68]     *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991).

[69]     *Ellis v. Chao*, 336 F.3d 114, 127 (2d Cir. 2003).

counterclaim-plaintiffs' counterclaims for fraudulent conveyance, trademark conversion, and attorneys' fees pursuant to N.Y.C.R.R. §130-1.1 would be futile, leave to amend is denied.

## V.     CONCLUSION

For the foregoing reasons, counterclaim-defendants' motion to dismiss is granted as to the fraudulent conveyance counterclaim, the trademark conversion claim, and attorneys' fees based on N.Y.C.R.R. §130-1.1. Counterclaim-defendants' motion to dismiss is denied as to the first counterclaim and as to Coleman for the patent conversion claim. The patent conversion claim is dismissed as to the other counterclaim-plaintiffs. The Clerk of the Court is directed to close this motion [Docket No. 36]. A conference is scheduled for June 5, 2012 at 4:30 p.m.

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated: New York, New York
        May 16, 2012

-21-

**-Appearances-**

**For Counterclaim-Plaintiffs:**

Wesley J. Paul, Esq.
Paul Law Group, LLP
41 Madison Ave
New York, NY 10010
(646) 202-2529

**For Counterclaim-Defendants:**

Nicholas Gaglio, Esq.
Axinn, Veltrop & Harkrider, LLP
114 West 47th Street
New York, NY 10036
(212) 728-2228

John M. Tanski, Esq.
Axinn, Veltrop & Harkrider LLP
90 State House Square
Hartford, CT 06103
(860) 275-8100